### State v. Zinkiewicz
*[Cite as 2 AOA 41]*

Case No. 11403
Montgomery County, (2nd)
March 26, 1990

4th Amend. U.S. Const.
R.C. 2907.32.3
Crim. R. 41(C)
Evid. R. 403(A)
Evid. R. 608

*Lee C. Falke, by Carley J. Ingram, Assistant Prosecuting Attorney, 41 North Perry Street,* *Dayton, Ohio 45402, Attorney for Plaintiff-Appellee.*

*Dennis L. Bailey, 367 W. Second Street, Suite 110, Dayton, Ohio 45402, Attorney for Defendant–Appellant.*

WOLFF, P.J.

Tyrone A. Zinkiewicz was indicted on one count of Illegal Use of a Minor in Nudity Oriented Material, in violation of R.C. 2907.323(A) (1), and one count of Endangering Children, in violation of R.C. 2919.22 (B)(5). Zinckiewicz was found guilty of both counts, but the endangering court was dismissed pursuant to R.C. 2941.25. Zinckiewicz was sentenced on the remaining count and appeals, advancing five assignments or error.

*First Assignment of Error*
THE COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS ON THE BASIS THAT THE SEARCH WARRANT WAS ILLEGALLY OBTAINED DUE TO STALE INFORMATION RECEIVED BY THE AFFIANT-OFFICER.

*Second Assignment of Error*
THE COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS ON THE BASIS THAT THE SEARCH WARRANT WAS ILLEGALLY BASED UPON AN UNCORROBORATED STORY FROM AN UNRELIABLE INFORMANT.

The gist of these two assignment is that the municipal judge who issued the search warrant lacked the requisite probable cause to do so because the affidavit supporting the warrant was based on stale, uncorroborated information from Kenneth M. Haston, the minor subject of the photographs in question.

The affidavit, presented to the municipal judge July 26, 1988, was signed Detective Matheny of the Montgomery County Sheriff's Office and stated in its entirety as follows:

"1. Now before the Court comes the Affiant, Det. P. J. Matheny, who states that she has been employed by the Montgomery County Sheriff's Office for the past 13 years. During the last 4 years, she had investigated and assisted in felony investigations. For the past 1 1/2 years, she has been assigned to the Rape and Morals Squad, and has received training and attended numerous seminars in the investigation of rapes and moral offenses.

"2. On 7-25-88, one Kenneth M. Haston, W/M/16, of 4057 Iddings Dr., Dayton, Ohio, contacted the Affiant, a sworn Deputy Sheriff of the Montgomery County Sheriff's Office. During the contact Kenneth M. Haston stated that he

had posed nude on several occasions for Tyrone Zinkiewicz, while he took photo's (sic) of him for the purpose of publication. Kenneth M. Haston stated that these photo's (sic) were taken at 637 Syracuse Avenue, Dayton, Harrison Twp., Ohio.

"3. During the interview, which was held at 4057 Iddings Dr., the Affiant learned that 5 or 6 nude photo's (sic) had been taken of him by Tyrone Zinkiewicz and that he had recovered 2 of the photo's (sic), but that Tyrone Zinkiewicz still has several more at his residence located at 637 Syracuse Avenue, Dayton, Harrison Twp., Ohio.

"4. Kenneth M. Haston also states that Tyrone Zinkiewicz also entices other juveniles into his home on Syracuse Avenue, for the purpose of engaging in sexual activities and posing for a Gay Magazine.

"5. Kenneth M. Haston also states that he has been shown pornographic magazines and nude photo's (sic) of several juveniles that have visited the Zinkiewicz residence.

"6. The Affiant feels that a violation of 2919.22 (B) (5) of the Ohio Revised Code has occurred and that evidence supporting the statements of Kenneth M. Haston exist (sic) at 637 Syracuse Avenue, Dayton, Harrison Twp., Montgomery County, State of Ohio, and that further delay of a search of the residence may prevent said evidence from being displayed to the Court.

"7. Further, the Affiant saith not. Detective Matheny also presented the two nude photos of Haston to the municipal judge when she presented her affidavit."

The trial court overruled the motion to suppress on the basis of *Illinois v. Gates* (1983), 462 U.S. 213 wherein Justice Rehnquist, writing for the court, stated at 239.

The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

Deputy Matheny testified at the suppression hearing that Haston first told her on July 25, 1988, that Zinkiewicz photographed him in the nude in May, 1988. She further testified that she "understood" that the municipal judge, although approving the warrant, expressed concern about the viability of the warrant because of the lapse of time between the photography session and Haston's informing Detective Matheny about the incident. Because of the length of time between when Haston claimed to have been photographed by Zinkiewicz and when he told Detective Matheny, Zinkiewicz claims the information was too stale to support a probable cause determination that he was presently in possession of nude photos of Haston as of July 26, 1988.

In the affidavit, the present tense is used in describing Zinkiewicz's possession of the Haston pictures. The tenor of the affidavit was that although Zinkiewicz took pictures for publication, he also retained a number of the pictures he had taken. A reasonable inference could be drawn that, despite the passage of time, Zinkiewicz would not have disposed of these items and that it was probable that they still were in his possession July 26, 1988.

More troublesome to us is Zinkiewicz's contention that Haston's statements to Detective Matheny were not corroborated. Detective Matheny testified that no effort was made to corroborate Haston's story. While Haston's photos corroborated his claim to have been photographed in the nude, they didn't corroborate the balance of his claims, including the allegations that Zinkiewicz was the photographer or was presently in possession of the remaining photographs. Hence, we are reluctant to approve the trial court's determination that the municipal judge had probable cause to issue the search warrant.

We do, however, conclude that the motion could have been properly overruled on the basis of *United States v. Leon* (1984), 468 U.S. 897, which established the so-called "good faith" exception to the exclusionary rule. See also *State v. Wilmoth* (1986), 22 Ohio St. 3d 251, *State v. George* (1989), 45 Ohio St. 3d 325.

In *Leon*, the court stated at 922:

"We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. We do not suggest, however, that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms."

The court stated at 926:

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable

cause."

In our judgment, Detective Matheny could have harbored an objectively reasonable belief in the existence of probable cause to believe zinkiewicz was in possession of nude photographs of Haston. Although the municipal judge expressed reservations about issuing the warrant, he did issue it. His concern was not the concern that has troubled us. The reservations attributed to the municipal judge do not establish that he abandoned his detached and neutral role. We agree with Judge Grady's statement, in dissent, that the determination of whether an officer has acted with objective reasonableness cannot *turn* on the fact that a warrant was issued. We do think, however, that the issuance of the warrant - which by law must be based on probable cause - is a factor worthy of consideration in determining whether an officer had "an objectively reasonable belief in the existence of probable cause." *Id.* It has not been suggested by Zinkiewicz that Detective Matheny was dishonest or reckless in preparing her affidavit.

Judge Grady however, does conclude that Officer Matheny was dishonest or reckless. *Id.* He attributes to Officer Matheny knowledge that Haston was the subject of a criminal investigation which, in turn, should have been related by her to the municipal judge. There is no direct evidence in the record that Officer Matheny possessed such information and the majority has not so inferred. Although Zinkiewicz faults Officer Matheny's not attempting to corroborate what Haston told her, he states at p. 26 of his appellate brief that she was "not aware of the pending criminal investigation of the informant (Haston)."

Judge Grady also finds Officer Matheny's affidavit false and misleading because it states that Haston contacted her, whereas in fact, she contacted Haston, and because she omitted any reference to Officer Caudit, who first called her about Haston. Judge Grady concludes that the omission of any reference to Detective Caudill was to head off inquiry by the municipal judge into Haston's background. This omission, coupled with the misstatement as to who contacted whom, served to portray Haston in a much more sympathetic light that Haston deserved. While the record might support the inferences made by Judge Grady, the majority has not made the same inferences.

The first two assignments are overruled.

*Third Assignment of Error*

THE COURT ERRED IN RESTRICTING DEFENSE COUNSEL'S CROSS-EXAMINATION OF THE COMPLAINING WITNESS RE-GARDING THE CONTENTS OF A TAPE RECORDED TELEPHONE CONVERSATION BY THAT WITNESS.

The trial court prohibited Zinkiewicz from introducing the tape of a telephone conversation among Haston and two confederates wherein they discussed various criminal activity in which they has been involved, their concern about being apprehended by the police, and future criminal activity, including thievery, which they needed to carry out to avoid apprehension.

Zinkiewicz contends on appeal that this tape tended to prove Haston has "a deceptive and conniving character." Although he cites Evid. R. 404(A)(2) and 404(B), the only apparent relevance of this information is to the credibility of Haston, which is governed by Evid. R. 404(3), which in turn refers to Evid. R. 608:

"(A) Opinion and reputation evidence of character.

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

"(B) Specific instances of conduct.

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may not be proved by extrinsic evidence. They may however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

The basic principle of Evid. R. 608 is that attacking credibility by evidence of specific instances of conduct is to be the exception to the rule rather than the rule itself. In our judgment, the trial court could have reasonably determined that the criminal conduct discussed on the tape was not clearly probative of Haston's untruthfulness. The trial court, however, did not rule on the basis of Evid. R. 608(B) but, rather, on the basis of Evid. R. 403(A). Exclusion *mandatory*.

Although relevant, evidence is not admissible if its probative value is substantially outweighed

by the danger or unfair prejudice, of confusion of the issues, *or* of misleading the jury. (Emphasis ours.)

The weighing process required by Evid. R. 403(A) must necessarily be commended to the sound discretion of the trial court. The criminal conduct discussed on the tape was unrelated to the charges for which Zinkiewicz was being tried. We find no abuse of discretion in the trial court's determining that the probative value of the tape was, in the trial court's words, "substantially outweighed by the danger of confusion of the issues and misleading the jury." The third assignment is overruled.

### Fourth Assignment of Error

THE COURT'S APPLICATION OF OHIO REVISED CODE SECTIONS 2907.323(A) (1) and 2919.22(B) (5) WAS UNCONSTITUTIONALLY OVERBROAD.

2907.323(A) (1) provides in pertinent part as follows:

"No person shall do any of the following:

Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity..."

*State v. Young* (1988), 37 Ohio St. 3d 249 determined, *inter alia*, that 2907.323(A) (3) is constitutional. The parties here agree that *Young* controls our disposition of this assignment. Syllabus 1 of *Young* states:

"R.C. 2907.323(A) (3) prohibits the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals and where person depicted is neither the child nor the ward of the person charged."

Likewise, R.C. 2907.323(A) (1) prohibits photographing a minor in a state of nudity where the nudity constitutes a lewd exhibition or involves a graphic focus on the genitals. Of the fourteen photographs in question, four photographs, in our judgment, depict nudity which can be constitutionally proscribed, those being State's Exhibits 5, 9, 14, 15.

The fourth assignments is overruled.

### Fifth Assignment of Error

THE COURT ERRED IN NOT ORDERING THE PROSECUTOR'S EVIDENCE LIMITED TO WHAT WAS ALLEGED IN THE PROSECUTOR'S RESPONSE TO THE REQUEST FOR A BILL OF PARTICULARS.

The contention here seems to be that the complete police report, furnished in response to Zinkeiwicz's demand for a bill of particulars, did not suffice as a bill of particulars and Zinkiewicz was entitled to sanctions.

As to the only count upon which Zinkiewicz stands convicted, the indictment was straightforward, and Zinkiewicz was not entitled to any more elucidation than was contained in the police report.

The other court, for which more elucidation might have been helpful, was dismissed.

There being no claimed or demonstrated prejudice, this assignment is overruled.

The judgment will be affirmed.

*Judgment affirmed.*

WILSON, J., Concurs.
GRADY, J. Dissenting.

I dissent from the opinion of the majority concerning the legality of the search of Appellant's home and the motion to suppress the fruits of the search, as discussed in the second assignment of error. I concur with the majority opinion concerning all other error assigned.

The facts of this case require that we address once again the question whether evidence obtained in a search conducted on the basis of a constitutionally defective search warrant should be suppressed upon the argument that the warrant was obtained and executed by officers acting in objective good faith.

There can be little question but that the warrant was defective. It was issued upon a hearsay affidavit without a showing of probable cause, a fundamental requirement of the constitutions of the United States[1] and the State of Ohio[2] and Ohio's Crim. R. 41.[3]

Probable cause exists where the facts and circumstances presented are sufficient in themselves to warrant a man of reasonable caution in the belief that a violation of law has been or is being committed. *Carroll* v. *United States* (1925), 267 U.S. 132. The source and mode of presentation must be such that the information provided is "reasonably trustworthy". *Id.* at 162. However, "probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules". *Illinois* v. *Gates* (1983), 462 U.S. 213, 232. It is safe to say that no factual context has provided greater difficulty for determinations of probable cause than those based on "tips" and allegations of "informants".[4]

The common requirements of the federal and

Ohio constitutions that warrants issue only "upon probable cause, supported by oath or affirmation", strongly suggest that the information provided be within the personal knowledge of the affiant. However, hearsay information may be considered in probable cause determinations so long as the magistrate is presented a "substantial basis" for crediting the hearsay. *Draper* v. *United States* (1959), 358 U.S. 307. *Jones* v. *United States* (1960), 362 U.S. 257, 269. To meet that test the magistrate must be informed of some of the underlying circumstances from which the hearsay source, i.e., the "informant", concluded that a violation has occurred and some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable. *Jones, supra.* Crim.R. 41(C). Absent that showing, the conclusion for probable cause is that of the affiant, or even the informant, and not that of the "neutral and detached magistrate" required by the constitutions. *Giordenello* v. *United States* (1958), 357 U.S. 480. *Johnson* v. *United States* (1948) 333 U.S. 10.

The foregoing, relatively simple rules have been sharpened and then revised in a line of cases beginning with *Aguilar* v. *Texas* (1964), 378 U.S. 108 and *Spinelli* v. *United States* (1969), 393 U.S. 410 and culminating in *Illinois* v. *Gates, supra.* At the risk of over-simplification, we may say that *Aguilar* and *Spinelli* imposed a specific, two-prong test for any hearsay used by a magistrate to find probable cause. First, the affidavit presenting the hearsay must set forth any of the underlying factual circumstances necessary to enable the magistrate independently to judge the validity of the informant's conclusion or allegation of a violation of law. Second, the affiant must show, if only by assertion, that the informant was "credible" or his information "reliable". Absent a showing of those two elements, an affidavit using hearsay to show probable cause is deficient and any warrant issued on that basis is constitutionally defective.

*Gates* did not reject the *Aguilar-Spinelli* tests, but sought to put them in context of the greater issue. Following numerous cases in which the tests proved overly restrictive or unduly mechanical in their application by courts, the Supreme Court stated in *Gates*:

"[T]he "two-pronged test" directs analysis into two largely independent channels -- the informant's "veracity" or "reliability" and his "basis of knowledge." There are persuasive arguments against according these two elements such independent status. Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S., at 233. The Court then went on to reaffirm the rule of *Jones* v. *United States, supra,* that " . . . the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis' for . . . conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more". 462 U.S., at 236. The Court concluded in *Gates*, at pp. 238-239:

"For all these reasons, we conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli.* In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations." See *Jones v. United States, supra; United States v. Ventresca,* 380 U.S. 102, 13 L Ed 2d 684, 85 S Ct 741 (1965); *Brinegar v. United States,* 338, U.S. 160, 93 L Ed 1879, 69 S Ct 1302 (1949). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones* v. *United States,* 362 U.S., at 271, 4 L Ed 2d 697, 80 S Ct 725, 78 ALR2d 233. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.* In *Gates*, police in Bloomington, Illinois received an anonymous letter alleging that Mr. and Mrs. Gates were selling drugs; that Mrs. Gates would drive their car to Florida on that date to be loaded with drugs; that Mr. Gates would fly to Florida in a few days to dive the car back; that the car's trunk would be loaded with drugs; and, that the Gates' had over $100,000 worth of drugs in the basement of their home. Acting on the tip, police learned that Mr. Gates had reservations to fly to Florida two days later. He was put under surveillance in Florida, where he stayed overnight and then left the following

day with a woman in a car bearing Illinois license plates registered to Gates. As the car travelled toward Illinois police obtained a search warrant for the car and the Gates' home from an Illinois magistrate. When the Gateses arrived home the police, armed with the warrant, searched the car and the home and found marijuana, which served as the basis for drug charges against the pair. The fruits of the search were suppressed by Illinois courts on the basis of *Aguilar* and *Spinelli*.

The United States Supreme Court reversed the Illinois courts in *Gates*, allowing the evidence seized in the search. The Court noted that the anonymous letter, standing alone, would not support a determination of probable cause to believe that drugs would be in the car. "The letter provides virtually nothing from which one might conclude that the author is either honest or his information reliable . . . Something more was required, then, before a magistrate could conclude that there was probable cause to believe that contraband would be found in the Gateses' home and car". (Citing Aguilar) 462 U.S., at 227.

The "something more" was found in the strong corroboration produced by the investigation. The information in the anonymous tip was explicit and detailed. The corroboration raised it from unsupported hearsay to the level of probable fact and provided a "substantial basis" for crediting it's truth under the rule of *Jones, supra*. Absent that "substantial basis", a tip or other statement of information and belief is a mere conclusionary statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. 462 U.S., at 239.

The Supreme Court of Ohio adopted and followed the rule of *Gates* in *State* v. *George* (1989) 45 Ohio St. 3d 325. In *George*[5] the Court endorsed the totality of the circumstances approach and held that a "fair probability" that the contraband would be where alleged satisfies the "substantial basis" requirement of *Jones*. The court also held that "Reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant". 45 Ohio St. 3d

at 330.

While the "totality of the circumstances" now governs probable cause determinations in Ohio per *George*, I believe that neither *Gates* nor *George* constitute a wholesale or radical departure from past experience, for two reasons. First, *Gates* reminds us that "veracity" and "basis of knowledge" remain relevant elements of the totality of the circumstances, and they are retained as specific factors requiring express consideration under Ohio's Crim.R. 41(C).[6] Second, *Gates* reminds us that affidavits insufficient in either of those two factors will be found to show probable cause only where evidence supporting the other factor as presented to the magistrate is convincing, or where other indicia of reliability are so strong, that the totality of the circumstances meets the "substantial basis" test.

Mindful as I am of the admonitions in *George*, I must conclude that the trial court, and the magistrate, erred in finding probable cause in the affidavit presented by Officer Matheny. The affidavit contained no statement or representation that Haston was a credible person or that his allegations were worthy of belief. The officer only recited Haston's allegations and offered the magistrate no substantiation or corroboration, other than two photographs of Haston in the nude, which could have been taken anywhere, at any time, by anyone and had no apparent connection with Appellant or his home. Thus, the elements of "veracity" and "basis of knowledge" to support the affidavit were either wholly absent or so lacking in particularity as to be less than marginal.

Like the anonymous letter in *Gates*, the affidavit ". . provides virtually nothing from which one might conclude that the (informant) is either honest or his information reliable". *Gates, supra*, at 227.

In contrast with *Gates*, the officer here neither gathered or presented additional facts from an investigation which might support her assertions, such as prior convictions of Zinkiewicz for similar crimes, like stories of other victims, or evidence tying the pictures to Zinkiewicz or his home. It may be that this kind of allegation is not easily corroborated. The fact does not, however, eliminate the "substantial basis" requirement to be met by the affidavit's showing. In adopting the unsupported representations of the affidavit, the magistrate's finding was nothing more than a "mere ratification of the bare conclusions of others" condemned in *Gates* (462 U.S., at 239). There was no "substantial basis" for the magistrate's determination that the

allegations were true according to the "fair probability" standards of *George*.

I note that in her affidavit Officer Matheny states that *she* is experienced in investigations of rapes and moral offenses and that *she* believes that a crime has been committed. Her statement gives the magistrate no basis for an independent conclusion of his own concerning the credibility or basis of knowledge of the hearsay informant, which is the inescapable, central and crucial issue. The magistrate must have that information in order to make an informed decision about probable cause. Absent that information, the decision is that of the officer or, as here, the informant. Any warrant issued on that basis is, in practical fact, procured and issued upon the unalloyed hearsay allegations of an unverified informant. For the reasons stated I find that the warrant to search Appellant's home was issued without probable cause and is defective under the rules of *Illinois* v. *Gates, supra,* and *State* v. *George, supra* and Crim. R. 41(C).

## II.

### *Good Faith Exception*

Evidence of crime obtained in a search conducted under the authority of a constitutionally defective warrant should not be suppressed from use in a prosecution of the person searched when the evidence was obtained by an officer who executed the warrant in objectively reasonable reliance on the magistrate's determination of probable cause and the technical sufficiency of the warrant he issued. *United States* v. *Leon* (1984), 468 U.S. 897. *State* v. *Wilmoth* (1986), 22 Ohio St. 3d 251.

The *Leon* court determined that there was no sound reason to apply the exclusionary rule as a means of correcting error on the part of magistrates, who are responsible for issuing warrants. Rather, because the exclusionary rule was historically intended to deter illegal conduct in the course of searches and seizures, its application should be limited to deterrence of police misconduct. Thus, in cases in which the warrant is subsequently found defective for lack of probable cause, suppression is appropriate only if (1) the defect is the result of dishonesty or recklessness on the part of the officer in preparing or presenting his affidavit or (2) the defect is so obvious and fundamental that the officer could not have harbored an objectively reasonable belief in the existence or probable cause, or (3) both.

A determination that the officer has acted with objective reasonableness cannot turn on the fact that a warrant was issued by a magistrate on the basis of the officer's application and affidavit. *Malley* v. *Briggs* (1986), 457 U.S. 335. The inquiry must look behind the warrant to determine "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization". *Leon,* at 922, note 23.

The validity of a warrant, and the reasonableness of an officer's conduct, must be assessed on the basis of the information the officer disclosed, or had a duty to disclose, to the issuing magistrate. *Maryland* v. *Garrison* (1987), 480 U.S. 79. A fair inquiry into objective reasonableness thus requires a review of all relevant facts known to an officer when he prepares his affidavit. *United States* v. *Edwards* (C.A. 4, 1986), 798 F.2d 686. What an officer knew but did not disclose in his affidavit concerning informant credibility is a circumstance relevant to an objective reasonableness inquiry. *United States* v. *Martin* (C.A. 8, 1987), 833 F.2d 752. *United States* v. *Edwards, supra.*

An officer presenting facts in an affidavit in support of a warrant application may not misrepresent any fact. Neither may he contrive to guide the magistrate's deliberation by providing only part of the relevant information known to the officer or which with reasonable diligence he could obtain. *United States* v. *Rule,* (1984), D.C. Me.), 594 F. Supp. 1223, 1227, note 1. That is especially true where the affidavit submitted to the magistrate is wholly lacking in indicia of the informant's credibility. *United States* v. *Reivich* (1985), 610 F. Supp. 583. In that event, facts known to the officer and relevant to the informant's credibility are material facts. Omission of a material fact may constitute that "reckless disregard" for the truth condemned in *Franks* v. *Delaware* (1978), 483 U.S. 154 and cited in *Leon, supra,* at 923, as a basis to find a lack objective reasonableness on the part of the officers. See: *United States* v. *Melvin* (C.A. 1, 1979), 596 F.2d 492; *United States* v. *Dennis* (C.A. 8, 1980), 625 F.2d 782.

Few investigations are at work product of a single officer. An officer who presents an application for a warrant supported by an affidavit may not omit relevant matters obtained from other officers. Compartmentalization of knowledge may not be intentionally employed for the purpose of avoiding constitutional defects or creating artificial "reasonableness" to satisfy a good faith standard. *Whitley* v. *Warden* (1971), 401 U.S. 560, 58 Ohio Ops.2d 423, cited in *Leon,* at 923, note 24.

When an officer presents a "bare bones" affidavit wholly lacking in terms of informant

credibility, he is obligated to reveal to the magistrate from whom he seeks a warrant any other material fact or information known or reasonably available to him bearing on that factor of informant credibility. Such facts become material to the magistrate's determination when indicia of credibility are otherwise lacking. While a partisan inclination to succeed in producing a warrant may be typical of one engaged in the "competitive enterprise of ferreting out crime" (*United States v. Johnson, supra,* at 14), it cannot be allowed to produce results inconsistent with the officer's sworn obligation to uphold the law and the burden of objective reasonableness now placed on him by *Leon*.[7] Omission of a material fact constitutes a reckless disregard for the truth which creates or compounds the resulting probable cause defect, and an officer who so acts has not met his obligation of objectively reasonable conduct or good faith.

Officer Matheny testified at the suppression hearing of 12 December 1988 that she is fourteen year veteran of the Montgomery County Sheriff's Office and had been a detective with that office for four years, assigned to investigate sexual offenses involving juveniles and adults. (T. 5,6)

Officer Matheny stated that on 21 July 1988 she was contacted by Detective Caudill of the Huber Heights, Ohio Police Department, who advised her of Haston's allegations against Appellant Zinkiewicz. (T. 21). Caudill provided two photographs of Haston, nude (T. 22), but no other information. (T. 21). Officer Matheny testified she asked Caudill how he came by his information, and that Caudill "said he was working on the case with Haston. But he didn't tell me what the case was and *I didn't ask him*". (T. 22). (Emphasis supplied.)

Acting on Caudill's lead, Officer Matheny and another officer, Turner, contacted Haston and interviewed him outside his residence four days later on 25 July. Haston identified the two photographs as taken by Appellant in late May of that year. (T. 24, 25). Haston told Matheny that the photos were taken at Appellant's house.

Officer Matheny reduced the information provided by Haston to affidavit form and presented it to a judge of the Vandalia Municipal Court on 26 July. The judge was given no other information. (T. 26). Officer Matheny conducted no independent investigation of the charges (T. 27) and made no effort to investigate Haston's background (T. 32), though he had told her he is bisexual. (T. 24). She did not reveal her knowledge or belief that Haston was the subject of a criminal investigation.

Haston testified at Appellant's subsequent trial, and stated that the first person to whom he made the allegations against Appellant was Detective Caudill. (T. 116). At that time Haston and another youth were under investigation for several crimes, including a brutal rape of another young male and a series of thefts. (T. 117, 129). Appellant Zinkiewicz was aware of these events, and when Haston was contacted by Officer Caudill he believed Appellant had provided the information to police. (T. 118). Haston then told Caudill of the photos taken by Appellant and several days later gave Caudill the two he had.

When Detective Matheny composed her affidavit she stated, at paragraph 2:

"2. On 7-25-88, one Kenneth M. Haston, W/M/16, of 4057 Iddings Dr., Dayton, Ohio, contacted the Affiant, a sworn Deputy Sheriff of the Montgomery County Sheriff's Office. During the contact Kenneth M. Haston stated that he had posed nude on several occasions for Tyrone Zinkiewicz, while he took photo's [sic] of him for the purpose of publication. Kenneth M. Haston stated that these photo's [sic] were taken at 637 Syracuse Avenue, Dayton, Harrison Twp., Ohio."

Officer Matheny's sworn statement is false and misleading. Haston did not contact the officer; she contacted Haston. Further, she wholly omitted any reference to her true source, Officer Caudill. That omission is material. It failed to report information known to Matheny that would bear on Haston's credibility (i.e., the investigation of Haston for criminal activity), and it neatly avoided any inquiry the magistrate would likely make about Haston's background upon learning of that fact. The result was to paint a picture of an innocent victim who is more deserving of belief than the subject of a criminal investigation who is trading information to help himself. *Anderson v. Maryland* (1976), 427 U.S. 463. *United States v. Dennis, supra.*

Because we are dealing with a standard of reasonableness and the acts expected of a "reasonably well trained officer" (*Malley v. Briggs, supra*), it is not an undue imposition to expect the officer to make appropriate inquiries concerning her informant's credibility. Officer Matheny made none. In view of her knowledge that Haston was the subject of a criminal investigation by another officer, She did not act reasonably in failing to inquire about Haston of the other officer. Her failure to make these inquiries is particularly relevant to a *Leon* determination in a context in which she presented no information of any kind in support of veracity and the informant's proven "basis of knowledge" was inconclu-

sive, at best.

The majority is of the view that the record does not support an inference that Officer Matheny knew that Haston was the subject of a criminal investigation. I believe that such an inference can be made in view of Officer Matheny's thirteen years of law enforcement experience and the nature of her source. More importantly, however, I believe that her failure to make a reasonable inquiry of her source, Officer Caudill, and her later misrepresentation to a judge in her sworn statement, exclude her actions from the realm of "objective good faith".

An officer who presents an application for a warrant and a sworn statement to a magistrate has a duty to assist the magistrate in his neutral and detached determination of probable cause. If a magistrate is to look to the "totality of the circumstances"per *Gates* and *George*, they may not be misrepresented or withheld from him.

I find that Officer Matheny, in executing a warrant to search Appellant's home obtained on the basis of her representations, did not act in objective good faith. She both misrepresented and omitted facts material to the magistrate's probable cause determination, and the constitutional defect flowed from that act. Her conduct is of the kind and character that has resulted, and which in the future may result in, constitutionally illegal searches of that most highly valued sanctuary, a private home.[8]

I do not hold that an officer seeking a warrant must always report to the magistrate the fact that he or she has obtained leads from other officers. That fact becomes material only when it has a bearing on informant credibility and the magistrate is given little or no other information on which to act. When, as here, credibility of an informant is wholly unsupported, any known and relevant information should be reported by the officer and she does not act reasonably in withholding it.

All evidence produced in the illegal search of Appellant's home should be excluded and the judgment of the trial court reversed.

---

[1] The Fourth Amendment to the United States Constitution.

[2] Section 14, Article I, Ohio Constitution.

[3] Crim. R. 41(C) provides in pertinent part:

"The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

[4] Historians tell us that the term "informant" was devised by the late J. Edgar Hoover, Director of the F.B.I., to describe

persons who provided information. Frequently, such persons were part of a criminal enterprise and would ordinarily have been called "informers". Because of the pejorative tone of that word, Mr. Hoover devised his own. Some writers have resisted the change.

[5] *George* did not involve a hearsay issue. A police officer stated by affidavit that he saw what he knew by experience to be marijuana growing in the yard of a place to be searched. The issue in *George* involved the scope of the warrant then issued to search the yard and inside buildings located thereon.

[6] It may be significant that Federal Crim.R. 41 makes no similar requirement.

[7] In addition to *Leons's* suppression of evidence penalty, an officer, acting without objective reasonableness in producing a warrant lacking in probable cause is now subject to civil penalties for deprivation of civil rights, per *Malley* v. *Briggs*, *supra*.

[8] "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman* v. *United States* (1961), 365 U.S. 505, 511.