**The STATE of Ohio, Appellant,**

v.

**SMITH, Appellee.**

[Cite as *State v. Smith* (2001), 146 Ohio App.3d 154.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18830.

Decided Sept. 28, 2001.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Kirsten A. Davies,* Assistant Prosecuting Attorney, for appellant.

*Raymond J. Dundes,* for appellee.

GEORGE M. GLASSER, Judge.

The state of Ohio is appealing the Montgomery County Court of Common Pleas' decision sustaining Dontay C. Smith's motion to suppress.

Smith was indicted by the Montgomery County Grand Jury on one count of possession of cocaine in an amount exceeding five grams but not exceeding twenty-five grams, in violation of R.C. 2925.11(A); trafficking in Ecstasy in the vicinity of a school or a juvenile, in violation of R.C. 2925.03(A); trafficking in cocaine in the vicinity of a school or a juvenile, in violation of R.C. 2925.03(A); and possession of ecstasy in an amount exceeding five times the bulk amount but not exceeding fifty times the bulk amount, in violation of R.C. 2925.11(A).

Smith filed a motion to suppress all physical evidence obtained through execution of a search warrant and statements obtained after Smith's arrest. A hearing was held on the matter, during which Montgomery County Sheriff's Sergeant David S. Hale was the sole witness. Admitted into evidence were the search warrant and its accompanying affidavit. The affidavit states:

"2. On June 6, 2000, Jonathan Meyer wm/022382 was arrested in front of 200 Kimbary, Washington Township, for Possession of Drugs, O.R.C. 2925.11. The Miami Valley Regional Crime Lab analyzed the drugs and found them to be Ecstasy (methylenedioxymethamphetamine) a Schedule I drug.

"3. On July 18, 2000, Sgt. Gary White, Dayton Police Department, forwarded a memo to Washington Township Substation of the Montgomery County Sheriff's Office reference information that White had received that Dontay C. Smith and Consuela Schwaller were residing at 200 Kimbary and was [sic] possibly dealing drugs from the residence.

"4. On July 18, 2000, Consuela Schwaller renewed her Ohio Driver's License. Schwaller listed her current address as 7169 Bluffs Drive, Centerville, Ohio 45459.

"5. On September 9, 2000, Det. Brian Sears, Centerville Police Department, had a confidential informant place a call to 432–0463. The confidential informant spoke with a male who identified himself as Dontay.

"The informant inquired about purchasing drugs, Dontay stated he did not want to talk about SHIT over the phone.

"6. On September 19, 2000, Det, [sic] Diane Taylor, Montgomery County Sheriff's Office checked the confidential informant for contraband and fitted the confidential informant with a wireless transmitter. The confidential informant was taken to 7169 by an unwitting informant. Both the [c]onfidential informant and the unwitting informant entered 7169 Bluffs Drive and spoke with Dontay. The unwitting informant and Dontay Smith went into a separate room and Dontay Smith provided the unwitting informant with a quantity of ecstacy [sic]. The unwitting informant and the confidential informant left the apartment and the unwitting informant provided the ecstasy to the confidential informant. The

confidential informant then provided the ecstacy [*sic*] to Det. D. Taylor. Who [*sic*] was again checked for contraband and debriefed.

"7. On September 19, 2000, Det. B. Isenbletter, Montgomery County Sheriff's Office, interviewed the unwitting informant and the unwitting informant advised that the unwitting informant has bought dope from Dontay Smith in the last several months. Shortly after the buy, the unwitting informant comments to the confidential informant about other quantities of drugs at the 7169 Bluffs Drive apartment. In the interview with Det. Isenbletter, the unwitting informant also indicated that there were additional quantities of drugs at the condominium.

"8. Affiant believes that illegal controlled substances are being abused and trafficked at 7169 Bluffs Drive, Washington Township, Montgomery County, Ohio. Affiant has been at and can visually identify 7169 Bluffs Drive."

Based upon this affidavit, Kettering Municipal Court Judge Moore issued a search warrant for 7169 Bluffs Drive.

At the suppression hearing, the prosecutor called Sgt. Hale to testify to the facts surrounding the affidavit. During cross-examination, Sgt. Hale admitted that the "unwitting informant" had not been searched before leaving the confidential informant's residence, that the unwitting informant had been aware that he would be charged with trafficking in Ecstasy, and that the unwitting informant had thus cooperated with the officers in hopes of obtaining a "deal."

In its decision, the trial court noted its concerns that the confidential informant had not been present during the transaction between the unwitting informant and Smith. The trial court stated:

"Paragraph 7 is based on statements the UI [unwitting informant] provided to Detective Isenbletter. The Court's concern with this information is that the affidavit made no mention of the facts (1) that the UI (Shawn Johnson) and the CI [confidential informant] were at 171 Hibberd Street before apparently going to 7169 Bluffs Drive, and (2) that Johnson was stopped and charged with a drug offense himself and was in jail on September 19, 2000, when he made the Paragraph 7 statements to Detective Isenbletter. Although the UI was making statements against his penal interest, he had a motivation to help himself by 'turning' on the Defendant."

Accordingly, the trial court sustained Smith's motion to suppress, finding that, under the totality of the circumstances, the affidavit contained insufficient evidence to establish probable cause for the issuance of a search warrant.

The state of Ohio now appeals, asserting one assignment of error:

"The trial court's suppression of the evidence was improper because the affidavit provided a substantial basis for the judge issuing the search warrant to

conclude that there was a fair probability that contraband would be found at 7169 Bluffs Drive, and, furthermore, officers acted in objectively reasonable reliance on the judge's issuance of the warrant."

The state's argument is that the trial court erred in determining that there was insufficient probable cause for the search warrant and that it improperly considered evidence not within the four corners of the affidavit that had been presented at the suppression hearing.

■ When assessing the adequacy of an affidavit offered to support a request for a search warrant, a magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527. This approach is often called the "totality of the circumstances" test. *Id.*

The *George* opinion set forth the standard of review as follows: In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *George, supra,* paragraph two of the syllabus, citing *Illinois v. Gates, supra.*

■ The affiant police officer described the history of drug abuse and trafficking at 7169 Bluffs Drive, and described a transaction whereby the unwitting informant and the confidential informant entered the residence at 7169 Bluffs Drive, met with Smith, and purchased a quantity of Ecstasy. The affidavit states that the unwitting informant and Smith "went into a separate room," where Smith provided the unwitting informant with Ecstasy. The state argues that the probable cause analysis should not fail based solely on the lack of information about what transpired between Smith and the unwitting informant outside the presence of the confidential informant. It is the state's contention that the unwitting informant's subsequent statement to Det. Isenbletter that he had made

past purchases of drugs from Smith at 7169 Bluffs Drive, serves as corroborating evidence and supports Judge Moore's decision that there was a fair probability that contraband would be found at the residence. Based upon the facts in this case, we find it questionable whether the affidavit provided a substantial basis for Judge Moore's determination that there was a fair probability that drugs and related paraphernalia would be found on Smith or in his residence.

■ Regardless, the state argues that even if there was not a substantial basis for Judge Moore's determination that there had been probable cause to issue the search warrant, Det. Hale's reliance on the search warrant had been objectively reasonable under the good faith exception.

Under the good faith exception, the United States Supreme Court has held that evidence obtained in violation of the Fourth Amendment by an officer acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded from state criminal prosecution. *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677; *George, supra; State v. Zinkiewicz* (1990), 67 Ohio App.3d 99, 585 N.E.2d 1007. The rationale for the good faith exception is addressed in *Leon, supra,* at 919, 104 S.Ct. 3405, 82 L.Ed.2d 677:

" 'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. * * * Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.' " *Id.,* quoting *United States v. Peltier* (1975), 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374. The court further stated:

"This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. * * * In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. * * * Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (Footnotes omitted.) *Id.* at 920–921, 95 S.Ct. 2313, 45 L.Ed.2d 374.

We note that the United States Supreme Court, in setting forth its good faith exception to the exclusionary rule, has cautioned that "the officer's reliance on the magistrate's probable-cause determination * * * must be objectively reasonable." *Id.* at 922, 95 S.Ct. 2313, 45 L.Ed.2d 374.

■ Even under the good faith exception, suppression remains an appropriate remedy where (1) "the magistrate or judge * * * was misled by information in an

affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role"; (3) an officer purports to rely upon "a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; or (4) "depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." (Citations omitted.) *Id.* at 923, 95 S.Ct. 2313, 45 L.Ed.2d 374.

Additionally, in evaluating the objective reasonableness of an officer's good faith, this court has continually held that the good faith reliance inquiry should be "generally" confined to the four corners of the affidavit to the search warrant. *State v. Klosterman* (1996), 114 Ohio App.3d 327, 332, 683 N.E.2d 100. The word "generally" has been used by this court with caution, since the same holding mentioned that certain exceptions to the rule confining the inquiry to the four corners of the affidavit would be recognized. *Id.* at 332–333, 683 N.E.2d 100. This court found in *Klosterman* that the good faith inquiry does not extend to facts outside the four corners of the affidavit that *support* probable cause. However, it would not stand to reason that facts outside the four corners of the affidavit that would weigh *against* a finding of probable cause should not be considered, and thus we find that this would qualify as an exception.

Curiously, despite Smith's having had the burden of proof in this instance, the prosecutor brought Sgt. Hale to the stand and it was determined, on cross-examination, that the unwitting informant had not been searched for contraband prior to going into 7169 Bluffs Drive. Sgt. Hale also stated that the unwitting informant, knowing that he would be charged with trafficking of Ecstasy and possibly possession, decided to speak with the police. However, Sgt. Hale was not aware of any deal between the unwitting informant and the police or the prosecutors, and that, to his knowledge, the unwitting informant had not been made any offers by him or fellow police officers.

We find that had this exculpatory information been included in the affidavit, these facts, coupled with the fact that no one witnessed the transaction between Smith and the unwitting informant, would not support a finding by a fair probability that Smith had provided the drugs to the unwitting informant. Accordingly, looking outside the four corners in this case, we find that the trial court did not err in refusing to apply the good faith exception and that there was insufficient probable cause based upon the information elicited at the motion hearing.

Accordingly, we find that the trial court did not err in sustaining Smith's motion to suppress.

The state's assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.