DECISION AND JUDGMENT ENTRY
Joseph A. Steele appeals his convictions for five counts of illegal use of a minor in a nudity-oriented material or performance in violation of R.C. 2907.323(A)(1) and four counts of compelling prostitution in violation of R.C. 2907.21(A)(2). He also appeals his sentence and the trial court's determination that he is a sexual predator. He assigns the following errors:
FIRST SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE GUILTY VERDICTS AS TO COUNTS 2, 7, 9, 12 AND 15 UNDER REVISED CODE § 2907.323(A)(1) WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AS TO THE ELEMENT OF "NUDITY" UNDER STATE V YOUNG, 37 OHIO ST. 3d 249 (1988), BECAUSE THERE WAS NO EVIDENCE THAT THE ALLEGED PHOTOS DEPICTED A "LEWD EXHIBITION" OR "GRAPHIC FOCUS ON THE GENITALS." ACCORDINGLY, MR. STEELE'S CONVICTIONS ON THESE COUNTS VIOLATED HIS RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
SECOND SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE TRIAL COURT VIOLATED MR. STEELE'S RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT DENIED HIS MOTIONS FOR ACQUITTAL AS TO COUNTS 2, 7, 9, 12, AND 15. MR. STEELE'S CONVICTIONS ON THESE COUNTS RESULTED FROM AN UNCONSTITUTIONALLY OVERBROAD APPLICATION OF R.C. § 2907.323(A)(1) UNDER STATE V. YOUNG, 37 OHIO ST. 3d 249, AND OSBORNE V. OHIO, 495 U.S. 103 (1990).
THIRD SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE INDICTMENT WAS INSUFFICIENT AS TO COUNTS 2, 7, 9, 12, AND 15 BECAUSE IT FAILED TO STATE THE ESSENTIAL ELEMENTS OF R.C. § 2907.323(A)(1), AS CONSTRUED BY STATE V YOUNG, 37 OHIO ST. 3d 249 (1988). ACCORDINGLY, MR. STEELE'S CONVICTIONS ON THESE COUNTS VIOLATED HIS RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
FOURTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED MR. STEELE'S RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY OMITTING FROM ITS JURY INSTRUCTIONS ON COUNTS 2, 7, 9, 12, AND 15 THE NARROWED DEFINITION OF "NUDITY" PRESCRIBED BY STATE V. YOUNG, 37 OHIO ST.3D (1988), I.E., THE REQUIREMENT THAT THE MATERIAL CONSTITUTE A LEWD EXHIBITION OR INVOLVE A GRAPHIC FOCUS ON THE GENITALS.
FIFTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE INDICTMENT WAS INSUFFICIENT AS TO COUNTS 2, 7, 9, 12, AND 15 BECAUSE IT FAILED TO STATE ONE OF THE ESSENTIAL ELEMENTS OF R.C. § 2907.323(A)(1), AS CONSTRUED BY STATE V YOUNG, 37 OHIO ST. 3d 249 (1988), I.E., THE MENS REA ELEMENT OF RECKLESSNESS. ACCORDINGLY, MR. STEELE'S CONVICTIONS ON THESE COUNTS VIOLATED HIS RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS.
SIXTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE TRIAL COURT VIOLATED MR. STEELE'S RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS WHEN IT DENIED HIS MOTIONS FOR ACQUITTAL AS TO COUNTS 10 AND 13, BECAUSE THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS.
SEVENTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE CONVICTIONS ON COUNTS 10 AND 13 ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND VIOLATE MR. STEELE'S RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
EIGHTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE ACCUSED WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND WAS THUS DEPRIVED OF THE RIGHTS TO COUNSEL AND DUE PROCESS GUARANTEED BY ART. I, §§ 10 AND 16 OF THE OHIO CONSTITUTION AND BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
NINTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND VIOLATED THE EX POST FACTO CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS WHEN IT SENTENCED MR. STEELE UNDER SENATE BILL 2 FOR OFFENSES FOUND TO HAVE BEEN COMMITTED BEFORE JULY 1, 1996.
TENTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE TRIAL COURT'S FINDINGS WITH RESPECT TO SENTENCING ARE NOT SUPPORTED BY THE RECORD SUCH THAT THE TRIAL COURT ERRED IN FAILING TO FIND MR. STEELE AMENDABLE [sic] TO A COMMUNITY CONTROL SANCTION AND SENTENCING HIM TO MORE THAN THE MINIMUM SENTENCE. ACCORDINGLY, MR. STEELE'S SENTENCING VIOLATED HIS RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
ELEVENTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 MR. STEELE'S CONVICTIONS ON COUNTS 5 AND 7 VIOLATED HIS RIGHT TO DUE PROCESS AND TO GRAND JURY PRESENTMENT UNDER ART. I, §§ 10 AND 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PERMITTING THE STATE TO INTRODUCE EVIDENCE OF MULTIPLE INCIDENTS AS TO THESE COUNTS AND BY OVERRULING MR. STEELE'S MOTION FOR ACQUITTAL AS TO COUNT 7.
TWELFTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE CONVICTIONS ON COUNTS 5 AND 20 ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THUS, THESE CONVICTIONS VIOLATE MR. STEELE'S RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
THIRTEENTH SUPPLEMENTAL ASSIGNMENT OF ERROR
 THE TRIAL COURT'S DETERMINATION THAT MR. STEELE IS A SEXUAL PREDATOR IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE[.] ACCORDINGLY, THIS DETERMINATION DEPRIVED MR. STEELE OF HIS RIGHT TO DUE PROCESS UNDER ART. I, § 16 OF THE OHIO CONSTITUTION AND THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Finding merit in some of appellant's assigned errors, we affirm the trial court's judgment in part and are forced to reverse in part.
 I.
Appellant was indicted on twenty-two counts including kidnapping, rape, compelling prostitution, pandering sexually-oriented material involving a minor and illegal use of a minor in a nudity-oriented material or performance. The court dismissed various counts prior to trial.
The jury returned guilty verdicts on counts 2, 7, 9, 12 and 15 for violations of R.C. 2907.323(A)(1), which prohibits the illegal use of a minor in a nudity-oriented material or performance.[2] The jury also returned guilty verdicts on counts 5, 10, 13 and 20 for violations of R.C. 2907.21(A)(2), which prohibits compelling prostitution, and count 19 for violating R.C. 2907.322(A)(1), which prohibits pandering sexually oriented material involving a minor. However, the trial court subsequently vacated the guilty verdict entered for count 19. After appellant was sentenced to a total of eighteen years imprisonment and declared a sexual predator, he filed this appeal.
 II.
In his first assignment of error, appellant argues that the guilty verdicts as to counts 2, 7, 9, 12 and 15, the illegal use of a minor in a nudity-oriented material charges, are not supported by sufficient evidence. In particular, appellant argues that there was no evidence that the alleged photographs depicted a lewd exhibition or a graphic focus on the genitals as required under State v. Young (1988), 37 Ohio St.3d 249. The state concedes that it failed to meet this element of Young but maintains that this proof was not required.
In State v. Young, the Ohio Supreme Court considered whether R.C.2907.323(A)(3) is constitutionally overbroad. R.C. 2907.323(A)(3) prohibits the possession of any material or performance showing a minor who is not the person's child or ward in a state of nudity unless a delineated exception applies. The Court concluded that the statute would be overbroad if it outlawed the possession of all material involving minors in a state of nudity. Id. at 252. To preserve the constitutionality of the statute, the Court construed R.C. 2907.323(A)(3) as prohibiting "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewdexhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." (Emphasis added.) Id. at paragraph one of the syllabus.
In State v. Walker (June 28, 1999), Ross App. No. 98CA2438, unreported, we held that the same analysis is applicable to R.C.2907.323(A)(1) and the state must prove that the material created involves a lewd exhibition or a graphic focus on the genitals. R.C.2907.323(A)(1) prohibits the taking of photographs or the creation, direction, production, or transfer of any material or performance showing a minor in a state of nudity unless a delineated exception is applicable; subsection (3) prohibits the possession or viewing of the identical materials. The two sections of the statute are clearly aimed at prohibiting the creation or possession of the same types of materials or performances. Therefore, the holding in Young is applicable to violations of R.C. 2907.323(A)(1). Moreover, many other appellate courts have reached the same holding. See, e.g., State v. Zinkiewicz (1990),67 Ohio App.3d 99; State v. Powell (Dec. 15, 2000), Montgomery App. No. 18095, unreported; State v. Moss (Apr. 14, 2000), Hamilton App. No. C-990631, unreported.
The state argues that we should rely on language in Osborne v. Ohio
(1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, as persuasive evidence that the narrowing construction of Young is unnecessary. InOsborne, the United States Supreme Court rejected the defendant's position that the state could not constitutionally prohibit the possession and viewing of child pornography. 495 U.S. at 111. The Court further rejected the defendant's position that R.C. 2907.323(A)(3) is unconstitutionally overbroad. The Court noted that the statute cited exemptions and "proper purposes" provisions and, therefore, may not be substantially overbroad. Id. at 112. The Court then stated that
 * * * However that may be, Osborne's overbreadth challenge, in any event, fails because the statute, as construed by the Ohio Supreme Court on Osborne's direct appeal, plainly survives overbreadth scrutiny. Under the Ohio Supreme Court reading, the statute prohibits "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." By limiting the statute's operation in this manner, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children. (Internal citations omitted.)
In a footnote, the Court stated that one might envision situations where, looking solely at the plain language of the statute, constitutionally protected conduct is criminalized. The Court went on to note that "given the broad statutory exceptions and the prevalence of child pornography, it is far from clear that the instances where the statute applies to constitutionally protected conduct are significant enough to warrant a finding that the statute is overbroad." Id. at 113, fn. 9.
We do not interpret this language as requiring us to find the statute constitutionally sufficient on its face. The language the state relies upon is mere dicta. The Supreme Court of the United States never concluded that the Ohio Supreme Court's adoption of the additional requirement to achieve constitutionality was erroneous. The Court definitively relied upon the additional language required by Young in rejecting Osborne's argument that the statute was overbroad. The Court acknowledged the possibility that such language was unnecessary but it did not make such a holding. Neither shall we. In conclusion, we agree with appellant that the state was required to prove that the photographs involved a lewd exhibition or a graphic focus on the genitals.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307,61 L.Ed.2d 560, 99 S.Ct. 2781.
Very few photographs were introduced at trial. Those that were introduced were of extremely poor quality and generally had "splotches" marring them. Only in one photograph, state's exhibit 2, could one observe a potentially "nude" picture. State's exhibit 2 depicted a girl with a breast exposed lying on what appears to be a bed. However, half of the photograph is not visible and the portion that is visible is very blurred. Thus, the state generally relied upon the testimony of witnesses to support its convictions on these counts.
It is not absolutely necessary for photographs to be introduced to sustain a conviction for illegal use of a minor in a nudity-oriented material; however, a conviction is difficult to obtain without that evidence. In Rhoden v. Morgan (M.D.Tenn., 1994), 863 F. Supp. 612, 617, the United States District Court for the Middle District of Tennessee held that a fact finder must evaluate the allegedly illegal material and may not merely rely on a witness' assertion that the material is obscene. The court held that a minor's testimony that she was photographed in various poses and in various stages of semi-nudity is insufficient because it is impossible to determine whether the accused actually photographed the minor's genitals, even if he attempted to do so. Id. at 617-618. The court stated that eyewitness testimony regarding the content of objectionable material may be enough to sustain a conviction; however, the witness must be able to describe the photographs with enough specificity to support a finding of lewdness, not merely nakedness. Id. at 619.
The state concedes that if the Young narrowing construction is applicable, the first assignment of error should be sustained because the state failed to prove that the photographs taken were a "lewd exhibition or involve[d] a graphic focus on the genitals." We agree. To convict a defendant under R.C. 2907.323(A)(1), the state must prove that the defendant recklessly photographed a minor who is not the defendant's child in a state of nudity. The state must also prove the additionalYoung element. Here, for each count alleging a violation of R.C.2907.32(A)(1), the state failed to prove that photographs were actually taken and/or that the photographs depicted a minor posing in a manner that would meet the Young standard. Therefore, we must conclude that a rational trier of fact could not have found that the essential elements of illegal use of a minor in nudity-oriented material or performance were established.
Appellant's first assignment of error is sustained and his convictions for counts 2, 7, 9, 12 and 15 are reversed.
 III.
Having sustained appellant's first assignment of error, appellant's second, third, fourth, fifth and eighth assignments of error are moot.
 IV.
In his sixth assignment of error, appellant argues that the court erred in denying his motions for acquittal on counts 10 and 13 because the evidence was insufficient to support the convictions. In his seventh assignment of error, he argues that the convictions for counts 10 and 13 are against the manifest weight of the evidence. We consider these assigned errors together.
Counts 10 and 13 alleged violations of R.C. 2907.21(A)(2), compelling prostitution. R.C. 2907.21(A)(2) states that, "No person shall knowingly * * * [i]nduce, procure, encourage, solicit, request, or otherwise facilitate a minor to engage in sexual activity for hire, whether or not the offender knows the age of the minor." As to count 10, the bill of particulars alleged that in the summer of 1995, at his residence, appellant solicited Tara LeMay to engage in sexual contact with Jennifer Booth and gave both girls money. As to count 13, the bill of particulars alleged that appellant solicited Jennifer Booth to have sexual contact with Tara LeMay and gave both girls money.
At trial, Ms. LeMay testified that appellant photographed her and Ms. Booth in the nude and that, he "might have wanted us to touch each other but we never did do that." Ms. Booth did not testify that appellant ever asked her to engage in sexual activity with Ms. LeMay. Following the state's case, defense counsel moved to dismiss these two counts. The trial court overruled this motion, stating that he thought there was testimony that appellant requested that the girls engage in sexual activity, though they both denied having done so.
We disagree. Ms. LeMay testified that appellant may have wanted her to engage in sexual activity with Ms. Booth. This appears to be mere speculation. Moreover, she never stated the basis for this conclusion. Appellant could have asked them to engage in sexual activity or Ms. LeMay could have merely assumed that appellant desired such activity. As there is no evidence that appellant asked or encouraged the girls to engage in sexual activity, these convictions are not supported by sufficient evidence and must be overturned.
The state concedes that if it is limited to the allegations outlined in the bill of particulars, these convictions should be overturned. However, the state argues that it could "substitute" other incidents to satisfy the statutory elements of R.C. 2907.21(A)(2). Ms. Booth testified that appellant offered her $500 or $600 to have sex with him and his nephew but she refused. Ms. LeMay testified that appellant offered her money if she would have sex with guys while he videotaped it but she never did. The state contends that the jury was free to credit their testimony regarding these two incidents and to convict appellant of compelling prostitution.
A defendant is entitled to a bill of particulars setting forth the ultimate facts upon which the state expects to rely in establishing its case, and the state should be restricted in its proof to the indictment and to the bill of particulars. State v. Miller (1989), 63 Ohio App.3d 479. However, Crim.R. 7(E) provides that "[a] bill of particulars may be amended at any time subject to such conditions as justice requires." Such an amendment can occur only "provided no change is made in the name or identity of the crime charged." Crim.R. 7(D). The proper procedure is for the prosecution to ask the court to amend the bill of particulars. SeeState v. Kersey (1997), 124 Ohio App.3d 513, 518.
The state maintains that because defense counsel failed to object to the presentation of this evidence or the jury instruction on these charges, any error is waived. However, following the defense case, appellant again moved for acquittal on these two counts on the ground that the state didn't establish the facts as specified in the bill of particulars. The court again denied the defense motion, without indicating that it was substituting the incidents testified to at trial for those specified in the bill of particulars. While defense counsel may have been well-advised to object to the girls' testimony regarding the other "compelling prostitution" incidents, we see no reason why defense counsel would have assumed at that point in the trial that the state was relying on these newly disclosed incidents to prove counts 10 and 13. We likewise see no rationale for requiring an objection to the generic instruction on compelling prostitution when the trial court has already informed defense counsel twice that he would submit the issue to the jury. Furthermore, even if we assume the error was waived, the plain-error rule in Crim.R. 52(B) allows defects that affect substantial rights to be noticed even though they were not brought to the trial court's attention. An alleged error constitutes plain error if the outcome of the trial would clearly have been different if the error had not occurred. State v. Wickline
(1990), 50 Ohio St.3d 114, 120. As we discuss below, we believe this would be the case.
We see a dangerous risk here that appellant was convicted by the jury of a crime on evidence never presented to the grand jury. Section 10, Article I of the Ohio Constitution provides that, "[N]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury * * *." Therefore, a defendant has the right to be tried on the same essential facts upon which the grand jury found probable cause.
The indictment charged in count 10 that appellant "did knowingly induce, procure, encourage, solicit, request or otherwise facilitate T.L., a minor, to engage in sexual activity for hire in violation of" R.C. 2907.21(A)(2) on or about the summer of 1995 in Vinton County. Count 13 was identical with the exception of the victim, who was listed as J.B. In the bill of particulars, the state indicated that count 10 arose out of appellant's request that Ms. LeMay engage in sexual contact with Jennifer Booth and count 13 arose out of appellant's similar request to Ms. Booth. Since the state never disclosed that appellant made other requests that the girls engage in sexual activity for hire on different dates and involving different sexual partners,[3] we must presume that the evidence presented to the grand jury was limited to the incident described in the bill of particulars. See State v. Vitale (1994),96 Ohio App.3d 695, 700.
If the identity of the crime moves from events occurring on one date to an entirely separate incident involving a different solicitation, the identity of the crime has been improperly changed. Cf. id. at 700-701. The issue is not whether appellant was prejudiced by the amendment. Id. at 701, citing State v. Barnecut (1988), 44 Ohio App.3d 149. In State v.Dilley (1989), 47 Ohio St.3d 20, the Supreme Court of Ohio stated that when the identity of a crime is changed, it does not matter if the defendant can show prejudice; the purpose of the rule is to avoid the potential of prosecutorial abuse.
Since the identity of the crime was changed, we conclude that the trial court erred in making the amendment.[4] We cannot allow a procedure which would "permit the court to convict the accused on a charge essentially different than that found by the grand jury." Vitale at 702, citing State v. Headley (1983), 6 Ohio St.3d 475.
Because appellant's constitutional rights were violated by the change in the identity of the crime and a conviction under the facts elicited in the bill of particulars cannot be sustained, we find that the court erred in denying appellant's motion for acquittal as to these two counts. Therefore, appellant's sixth assignment of error is sustained and the seventh assignment of error is moot.
 V.
In his ninth assignment of error, appellant argues that the trial court erred in sentencing him under Am.Sub.S.B. No. 2 for offenses committed prior to July 1, 1996. The state concedes that the court erred in this regard and the case must be remanded for re-sentencing.
The parties agree that all the events in this case occurred prior to July 1, 1996, except those in count 2 which we have already overturned. "The amended sentencing provisions of Am.Sub.S.B. No. 2 apply only to those crimes committed on or after July 1, 1996." State v. Rush (1998),83 Ohio St.3d 53, syllabus at paragraph two. Therefore, the court erred in sentencing appellant under the current sentencing scheme rather than the scheme in effect at the time the crimes were committed. Appellant's ninth assignment of error is sustained.
 VI.
In his tenth assignment of error, appellant argues that the court's findings under Am.Sub.H.B. No. 2 are not supported by the record and the court erred in failing to find him amenable to a community control sanction and by imposing more than the minimum sentence. The state again concedes that the court erred in sentencing appellant under this statutory scheme but argues that the findings are appropriate as they pertain to count 2. As we have overturned appellant's conviction as to count 2, appellant should not have been sentenced under the current sentencing structure. Appellant's tenth assignment of error is sustained.
 VII.
In his eleventh assignment of error, appellant argues that the court erred in permitting the state to introduce evidence of multiple incidents as to counts 5 and 7 and by overruling his motion for acquittal concerning count 7. As we have already overturned appellant's conviction on count 7, this assigned error is moot as it pertains to that count. However, we will consider whether the court erred concerning count 5.
Count 5 of the indictment charged appellant with violating R.C.2907.21(A)(2), compelling prostitution. The bill of particulars as to that count reads:
 Joseph A. Steele violated R.C. 2907.21(A)(2). Joseph A. Steele did knowingly induce, procure, encourage, solicit, request, or otherwise facilitate Chandra Schoonover (D.O.B. 03/07/78) to engage in sexual activity for hire. Joseph A. Steele paid Chandra $65.00 (approximately) to have sex with Jeremy Webb. This happened in the residence of Joseph A. Steele in Zaleski, Vinton County, Ohio. This happened when Chandra was 17 years of age. Prior to this, Joseph A. Steele paid Chandra by forgiving a loan he had made to her in exchange for her having sex with Jeremy Perry. This occurred at K.C.'s Minimart, Zaleski, Vinton County, Ohio when Chandra was 16 years of age.
Appellant argues that defense counsel repeatedly objected in bench conferences to the court permitting the state to introduce evidence of multiple incidents, though many of these objections were not included in the transcript.[5] Appellant contends, however, that his argument regarding the use of multiple incidents to prove one count was discussed on pages 268 to 270 of the transcript.
Appellant submits that if the grand jury intended indictments as to two incidents, there would have been two separate counts in the indictment. He further argues that the court violated his right to grand jury presentment by allowing the state to rely on both incidents. Appellant contends that the second incident should have been treated as mere surplusage and the state should have been restricted to the allegation that Ms. Schoonover was paid to engage in sexual activity with Jeremy Webb, deleting any reference to Jeremy Perry.
The state contends that it did not introduce any evidence that appellant offered Ms. Schoonover money to engage in sexual activity with Jeremy Perry and made no reference to this incident in its closing statement. Rather, Ms. Schoonover testified that appellant paid her to engage in the sexual activity with Mr. Perry during defense counsel's cross-examination.
Under Crim.R. 8(A), each offense in an indictment must be delineated in a separate count. If more than one offense is stated in a single count, the indictment suffers from duplicity. State v. Stratton (1982),5 Ohio App.3d 228, 230. In its strictest sense, duplicity applies to the joinder of separate and distinct offenses in a single count, though it is sometimes made applicable to the misjoinder of offenses in the indictment generally. State v. Johnson (1960), 112 Ohio App. 124, 127. Under R.C.2941.28, an indictment cannot be quashed, set aside, or dismissed because of misjoinder or duplicity. Rather, the court may sever the indictment. R.C. 2941.28. Any objections to an indictment must be made before trial. Crim.R. 12(B)(2).
Here, appellant does not contend that the indictment itself suffered from duplicity. Rather, appellant seems to contend that the bill of particulars was duplicitous in that it stated two separate incidents in support of one count. However, appellant does not argue that he was misled in preparing for trial because he did not know which incident the state was relying upon. At any rate, if appellant believed he was misled by the bill of particulars, he should have objected prior to the commencement of trial and requested that the state clarify which incident it was relying upon. As he did not make such an objection or request, any error regarding the contents of the bill of particulars would be waived.
Instead, appellant argues that the court should not have allowed the state to introduce evidence regarding both incidents described in the bill of particulars concerning count 5. When the state rested, appellant argued that as to count 7, which also included two incidents in the bill of particulars, the state could only rely on the first incident cited. Appellant argued that the information regarding the second incident was a "gratuitous sentence." However, appellant did not raise the same objection to count 5 and, therefore, waived any objection.
Even if a proper objection had been made, this assigned error must still be overruled. Upon direct examination Chandra Schoonover testified that appellant paid her $65 to have sexual intercourse with Jeremy Webb. During direct examination, Ms. Schoonover also testified that she had sex with Jeremy Perry at the store and appellant videotaped the encounter.[6]
However, the state did not elicit any testimony from Ms. Schoonover that appellant offered her money to engage in the encounter with Mr. Perry. Rather, on cross-examination by defense counsel, Ms. Schoonover testified that appellant paid her to have sex with Jeremy Perry prior to the incident with Mr. Webb.
The record demonstrates that the state relied solely on the incident involving Mr. Webb in attempting to prove count 5. Any evidence pertaining to Ms. Schoonover being paid by appellant to engage in sexual activity with Mr. Perry was introduced by defense counsel. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make."State ex rel. Beaver v. Konteh (1998), 83 Ohio St.3d 519, 521. Furthermore, the state did not cite the incident with Mr. Perry as supportive of count 5 in its closing statement and appellant never requested a jury instruction to clarify the evidence regarding this allegation.
In sum, the state did not improperly rely upon the incident between Ms. Schoonover and Mr. Perry. Any improper reference to this incident in the bill of particulars was waived and any actual error was invited by appellant. Therefore, appellant's eleventh assignment of error is overruled.
 VIII.
In his twelfth assignment of error, appellant contends that his convictions for counts 5 and 20 were insufficient as a matter of law and against the manifest weight of the evidence. We disagree.
The standard applicable to insufficient evidence claims was outlined in section II of this opinion. Both counts charged appellant with compelling prostitution in violation of R.C. 2907.322(A)(1). As to count 5, Chandra Schoonover testified that she had sex with Jeremy Webb at appellant's house. Prior to the encounter, appellant told her that he could arrange for her to have sex with Mr. Webb and that he would pay her for it. Appellant paid her $55 or $65 for having sex with Mr. Webb. This testimony alone is sufficient to establish that appellant requested that Ms. Schoonover engage in sexual activity for money. Further, it is sufficient to demonstrate that appellant facilitated the encounter as he allowed the teenagers to utilize his home to engage in sexual activity for hire.
As to count 20, Dan Hill testified that he had sex with Jennifer Booth at appellant's store. Mr. Hill testified that "[s]omehow it was talked about" that he and Jennifer would have sex, appellant would tape it, and Mr. Hill would get $50. Mr. Hill also testified that appellant personally paid him $50 out of the store's cash register. Jennifer Booth testified that appellant provided them with a condom.
While there is no testimony that appellant personally offered Mr. Hill money to engage in sexual activity, the evidence is still sufficient as to this count. There was evidence that appellant actually gave Mr. Hill the money he was promised if he engaged in sexual activity. Therefore, it was permissible for the jury to infer that appellant informed Mr. Hill, either personally or via a third party, that he would pay him money to have sexual relations with Ms. Booth. The evidence was sufficient as to this count.
Appellant also contends that these two convictions are against the manifest weight of the evidence. When considering an appellant's claim that his conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193. The reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree
with the fact finder's resolution of the conflicting testimony." Statev. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Tibbs v. Florida
(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve.State v. Thomas (1982), 70 Ohio St.2d 79, 80; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt.
We find that neither conviction was against the manifest weight of the evidence. The jury was free to credit the victims' testimony that appellant offered each of them money to engage in sexual activity, that they engaged in such activity, and that appellant paid them for their actions. The jury did not clearly lose its way in finding appellant guilty of counts 5 and 20.
Because appellant's convictions for counts 5 and 20 are supported by sufficient evidence and are not against the manifest weight of the evidence, we overrule appellant's twelfth assignment of error.
 IX.
In his thirteenth assignment of error, appellant alleges that the court erred in finding him a sexual predator. Because of our decision to reverse seven of appellant's nine convictions, this assigned error has merit. Upon remand, the trial court must re-determine, based on the remaining convictions and other relevant information, whether or not appellant can still be found a sexual predator. See State v. Maxwell
(Sept. 14, 2000), Franklin App. No. 99AP-1177, unreported.
 X.
Appellant's first, sixth, ninth, tenth and thirteenth assignments of error are sustained; his second, third, fourth, fifth, seventh and eight assignments of error are moot; and assignments of error eleven and twelve are overruled. The judgment of the trial court is affirmed in part, reversed in part, and remanded for further action consistent with this opinion.
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
William H. Harsha, Judge.
Kline, J. Concurs in Judgment and Opinion.
Evans, J. Concurs in Judgment Only.
 APPENDIX
Deputy Donald Peters testified that he conducted a search of appellant's residence and KC's Mini-Mart, a business owned by appellant and his wife. Deputy Peters sought evidence of pornography based on Kari Piatt's report that appellant had taken nude photographs of her. Deputy Peters testified that he did not find any pornographic tapes but did find some Polaroid still shots in a desk drawer in the office of KC's Mini-Mart. He also found a "restraint" on the floor underneath the desk. During cross-examination, Deputy Peters acknowledged that the pictures had brown "splotches" on them.
Kari Piatt testified that she was sixteen years old at the time of trial. She testified that one evening in February 1998 she was in the back room of KC's Mini-Mart with appellant, Jeremy Perry and Todd Thomas. Appellant gave her whiskey to drink and asked her and Jeremy to make a video. Ms. Piatt testified that she did not want to make the video but could not recall if she told that to appellant. Ms. Piatt took her clothes off with some assistance from Jeremy. Appellant set up a video camera and was in the room videotaping while Ms. Piatt had sexual intercourse with Jeremy and Todd. The next day, appellant showed Ms. Piatt the videotape.
Ms. Piatt also testified regarding an incident that occurred in the late fall or early winter prior to the videotaping. Ms. Piatt was babysitting appellant's son when appellant asked her to come into his bedroom. Appellant put restraints on Ms. Piatt's arms and hooked them to the bedpost. He then began taking photographs. Ms. Piatt identified herself in some of the state's photographic exhibits. On cross-examination, Ms. Piatt indicated that these pictures were taken before the restraints were placed on her. She further testified that her clothes were off before she was tied up.
Todd Thomas testified that he is twenty-two years old. Mr. Thomas testified that he had never been to KC's Mini-Mart before the evening he had sex with Kari Piatt in February 1998. He stated that Kari was naked when he entered the room and that she appeared willing to have sex with Jeremy. While she was having sex with Jeremy, she asked Mr. Thomas if he was "going to stand there or join in."
Angela Huffman testified that she was a clerk at KC's Mini-Mart but stopped working there after the search of the store. Ms. Huffman testified that a few days before the search, appellant told her that he heard that Kari was going to press charges against him. Appellant also told her that Kari was trying to make things up against appellant because he told her she couldn't babysit for him anymore. On cross-examination, Ms. Huffman testified that she was on duty on February 7, 1998. She indicated that she didn't hear anything strange or see anything on the store monitors.
Jeremy Perry testified that he had sex with Kari Piatt in the back room of KC's Mini-Mart. He indicated that Kari took her clothes off and was willing to have sex with him and Todd. Mr. Perry saw a video camera sitting on the steps but no one was operating it. There was a television there also and when Mr. Perry walked by it, he saw his legs on the television. Mr. Perry testified that appellant came in and out of the room the whole time but was not holding a video camera.
Mr. Perry also testified that appellant had taken his picture on more than one occasion when he was fourteen or fifteen years old. Mr. Perry testified that he and appellant were out drinking and then "got high." Appellant showed an X-rated tape during which Mr. Perry took his clothes off and appellant began taking photographs. Mr. Perry testified that appellant showed him the pictures he had taken. He also saw a photograph of Kari Piatt in which she had no clothes on and her breast could be seen. He testified that the picture showed Kari from head to toe.
Chandra Schoonover testified that when she was fifteen years old appellant took pictures of her. Appellant told her that he was associated with modeling agencies. In the initial photographs, Ms. Schoonover was wearing bathing suits and lingerie but he also took nude photographs. Appellant gave Ms. Schoonover alcohol in exchange for the pictures, which Ms. Schoonover never saw. She could not recall if her breast was exposed.
Ms. Schoonover also testified that she had sex with Jeremy Webb on one occasion at appellant's home. Appellant told her he could arrange for her to have sex with Mr. Webb if she wanted and that he would pay her for it. Appellant later paid her $55-65. Appellant took photographs of her and Mr. Webb while they had sex. Ms. Schoonover was not yet eighteen years old when she had sex with Jeremy. Approximately one year prior to having sex with Jeremy Webb, Ms. Schoonover had sex with Jeremy Perry at KC's Mini-Mart while appellant filmed it. On cross-examination, Ms. Schoonover testified that appellant paid her to have sex with Mr. Perry.
Jeremy Webb testified that he had sex with Chandra at appellant's house. When he first arrived, appellant, Chandra and Mr. Webb went into the bedroom. Mr. Webb and Chandra took their clothes off and got into bed. Appellant left the room but came back when Mr. Webb and Chandra finished having sex. Appellant took photographs of Mr. Webb and Chandra while they were still in bed.
Tara LeMay testified that appellant took photographs of her in the summer of 1995 in appellant's trailer. The first time, Ms. LeMay and Jennifer Booth were both present. They had their clothes on but then took them off towards the end. Both Ms. LeMay and Jennifer were completely naked and appellant had them pose in different positions. Appellant paid both girls. On the second occasion, Ms. LeMay again took her clothes off and was paid. When she was photographed with Jennifer, appellant "wanted us to touch each other but we never did do that." Ms. LeMay and Jennifer never had contact with each other besides just sitting next to one another. Appellant also brought out a bag "with dildos and stuff" and put them in the pictures. Ms. LeMay was fifteen years old at the time.
Jennifer Booth testified that she was fourteen or fifteen years old when appellant took photographs of her. Ms. Booth testified that appellant took pictures on more than one occasion but she was not sure how many times. Ms. Booth indicated that she was wearing a bathing suit or underwear and a bra at first but appellant also took completely nude photographs of her. Her body was not covered in any way. Ms. Booth testified that appellant gave her $600 to $700 for posing for the photographs.
Ms. Booth also testified that she had just turned fifteen when she had sex with Dan Hill at KC's Mini-Mart in appellant's office. Appellant gave them a condom but a month later Ms. Booth learned she was pregnant. Ms. Booth saw the tape of her and Dan having sex two to three weeks after the event.
Carrie Collins testified that she worked at KC's Mini-Mart and she knew of five or six cameras in the front of the store. Ms. Collins testified that teenagers would come in and ask for appellant and then go to his trailer, the back room, or appellant's van. When they returned, he or one of the teenagers would come in and get money from the register.
Greg Scarberry testified that he frequently bought sandwiches from KC's Mini-Mart and also rented videotapes, including commercially available pornographic tapes. On one occasion, appellant told Mr. Scarberry that he had a couple of homemade videos. On cross-examination, Mr. Scarberry admitted that appellant never said the videos were pornographic.
John Hunter testified that he worked at KC's Mini-Mart three or four summers ago. He testified that appellant once brought in a yellow and blue duffel bag. The bag was open and Mr. Hunter saw pictures, including a photograph of Tara LeMay. Tara was naked and her breast was exposed. There were also photographs of people Mr. Hunter did not know. In some of the photos, the person had a few articles of clothing on and in some the person had none.
Jennifer Brooks testified that she worked at KC's Mini-Mart and that appellant asked her to do pictures and pornographic movies sometime between February and April 1996. Appellant also showed Ms. Brooks a movie and pictures of women in lingerie but she did not recognize any of the people. Appellant told Ms. Brooks that Chandra had made a movie for him and did other things he asked her to do for money.
Dan Hill testified that he had sex with Jennifer in the office of the store in the summer of 1996 or 1997. "Somehow it was talked about" that he and Jennifer would have sex and it would be taped. Mr. Hill would receive $50 in exchange. After he and Jennifer had sex, appellant paid him $50.
At the close of the state's case, appellant moved to dismiss various counts. Counts 14, 16, 17 and 18 were dismissed under Crim.R. 29(A). The court denied appellant's Crim.R. 29(A) motion on counts 7, 10, 11, 13, 19 and 20.
In the defense case-in-chief, Melissa Steele testified that she and appellant have been married since 1989 and have two children. She testified that she and appellant owned KC's Mini-Mart from 1993 to 1998. Mrs. Steele testified that there was a computer system in the store instead of a regular cash register. On the computer, there was a function whereby one could hit "pay out" and remove money from the register. However, a receipt was needed to substantiate the removal of the money. Mrs. Steele testified that she kept close track of the money at the store. Mrs. Steele also indicated that she and appellant did not possess a video camera or a Polaroid camera. Mrs. Steele testified that she was in the store every day and that Tink Walters was living in the room adjoining the office and had access to the office. He lived there from the end of 1997 until March or April 1998. Mrs. Steele also testified that a few days before the police search she saw Kari Piatt's brother, Petey, looking in the top, middle drawer of the desk in the office. When Mrs. Steele asked what he was doing he said he was looking for his friend's cigarettes. Mrs. Steele noted that there was no reason why the cigarettes would be in the drawer.
James Walters testified that his nickname is "Tink" and that he lived at the store for a few months but moved out in February 1998. He testified that appellant didn't keep alcohol around the store and that anyone who came to visit could go into the office. Mr. Walters further testified that he saw Petey in the office on the Sunday before the police search. Mr. Walters also indicated that Kari Piatt continued coming to the store after February 7, 1998, and she didn't seem afraid of appellant. Mr. Walters testified that he never saw nude photographs of teenagers around the store. On cross-examination, Mr. Walters denied telling the Sheriff's Department that when he was sixteen years old appellant asked Mr. Walters to masturbate in front of him. However, after having his memory refreshed, Mr. Walters stated that appellant must have asked him that but it didn't seem serious at the time.
Jeremiah Riffle testified that he worked at KC's Mini-Mart and he recalls Kari, Jeremy and Todd being in the storage room. Mr. Riffle testified that he doesn't know what they were doing because he did not stay in the room. Mr. Riffle also testified that appellant did not remain in the room but left the store. Appellant returned at 11:00 p.m. and gave Mr. Riffle a ride home. Mr. Riffle also testified that there was no other night that Kari, Jeremy and Todd were in the storage room.
Ivy Steele, appellant's sister, testified that appellant does not drink and that she never saw alcohol or marijuana at the store. She also testified that appellant does not own a video camera, that he borrowed Ms. Steele's camera on occasion, and that she never allowed appellant to use her video camera outside of her presence. Ms. Steele also testified that Kari Piatt and Jeremy Perry both have reputations for not telling the truth.
[2] A summary of the evidence introduced at trial appears as an appendix to this opinion.
[3] Neither of the victims testified as to when appellant offered them money to engage in sexual activity with him, his nephew, or other males. However, it appears from the testimony that these requests did not occur the same day as the joint "photo shoot," especially since appellant made different requests of each of the girls.
[4] It is not clear whether the trial court made a tacit amendment by allowing these counts to be submitted to the jury based on incidents not cited in the bill of particulars or erroneously believed the evidence was sufficient to prove appellant had asked Ms. LeMay and Ms. Booth to engage in sexual activity with each other in exchange for money. Regardless, these convictions must be overturned.
[5] The proper method of correcting an error in the record is described in App.R. 9(E). However, in his reply brief, trial counsel indicated that he could not ethically make such a correction as he could not accurately reconstruct the missing bench conferences due to the passage of time and the number of cases he has handled. We are, however, confined to the record before us.
[6] In count 6, appellant was charged with filming Ms. Schoonover and Mr. Perry engaging in sexual activity. Apparently this testimony was elicited to prove this charge.